UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

CASPER BROWN,

                Plaintiff,                Case No. 1:12-cv-453

v.                                         Honorable Janet T. Neff

ISAAC ALEXIS et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Casper Brown presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the G. Robert Cotton Correctional Facility (JCF), though the actions about which he complains primarily occurred while he was being treated at the MDOC's Duane Waters Hospital (DWH). He sues the following DWH employees: Doctors Isaac Alexis and Shan Ansari; and Nurse Angel Sheppard. He also sues Dr. David Edelman, the Director of Corizon Medical Services, and JCF medical provider David Smith.

Plaintiff's complaint is extremely brief, though he attaches over 40 pages of grievances and medical records. Plaintiff alleges that he was admitted to DWH on December 28, 2011, after he had received shoulder surgery at Oakland Hospital in Marshall, Michigan. When he was released from Oakland Hospital, his treating physician, Dr. Garzia, issued a prescription for 15 mg of morphine and 1,000 mg of Norco[1] for pain. Shortly after he arrived at DWH, Plaintiff's prescription pain medication was cut in half by Defendants Edelman and Alexis. A week later, Plaintiff's prescriptions expired, and Defendant Sheppard informed Plaintiff that she could not give him additional medication without a doctor's order. The following day, Defendants Alexis and Ansari ordered another three-day supply of medication. The three-day prescription expired and was reissued on three consecutive occasions. According to Plaintiff, he was forced to complain for hours or days before each renewal. After two weeks at DWH, Plaintiff's prescription pain medication was stopped entirely, though Plaintiff apparently continued to receive ibuprofen. (*See* Attach. to Compl., docket #1-1, Page ID##29-30, 32.) At that time, Plaintiff could not move his arm or shoulder and apparently remained in pain. He started to attend physical therapy with Defendant Smith. Plaintiff

---

[1]Norco, like Vicodin, is a prescription analgesic combination of hydrocodone (a semisynthetic opioid) and acetaminophen. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1882 (32d ed. 2012).

requested a TENS[2] unit, which was denied. Smith instead provided heat for his shoulder. A few days later, Plaintiff was seen again at Oakland Hospital for follow-up. Dr. Garzia wrote another prescription for pain medication. Defendant Doctors Alexis and Ansari determined that the medication was not required and declined to fill the prescription. According to the documentation attached by Plaintiff, which he does not dispute, Plaintiff apparently continued to receive ibuprofen.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages of $2 million from each Defendant.

### Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

---

[2]TENS is the abbreviation for transcutaneous electrical nerve stimulation, a technique used to provide pain relief by applying electrodes to the skin to block impulses in underlying nerves. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1882 (32d ed. 2012); *see also* OXFORD DICTIONARIES PRO (June 22, 2012, 4:05 PM), http://english.oxford dictionaries.com/definition/TENS.

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of

> mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff alleges nothing more than disagreement with his medical providers. According to his allegations, the MDOC and its healthcare providers authorized shoulder surgery at an outside hospital, followed by multiple weeks of hospitalization at DWH. During that time,

Plaintiff was prescribed prescription pain medications for two weeks and ibuprofen thereafter. He also was referred to physical therapy. Despite the fact that his demands for more prescription pain medication and for the use of a TENS unit were denied, Plaintiff nevertheless does not dispute that he was seen and treated repeatedly for his shoulder problem and pain. Under these circumstances, Plaintiff's allegations do not support a finding that Defendants were deliberately indifferent to his serious medical needs. Plaintiff therefore fails to state an Eighth Amendment claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: July 3, 2012             /s/ Janet T .Neff
                                Janet T. Neff
                                United States District Judge